## STINSON *v.* STATE

### Opinion delivered October 2, 1916.

1. CARNAL ABUSE—PROOF OF MORE THAN ONE CRIMINAL ACT.—Where an indictment charged but one offense of carnal abuse, proof of the act of carnal abuse at any time within the period of limitation for the prosecution of such offenses (three years) is admissible and will sustain the charge.

2. EVIDENCE—CARNAL ABUSE—QUESTIONS PROPOUNDED TO PROSECUTRIX.—In a prosecution for the crime of carnal abuse, questions asked the prosecuting witness as to the details of the alleged crime, *held* admissible.

3.  APPEAL AND ERROR—IMPROPER TESTIMONY ELICITED ON CROSS-EXAMINATION—INVITED ERROR.—Where counsel for appellant, on cross-examination of one of appellee's witnesses asked questions eliciting incompetent testimony, it is not prejudicial error for the trial court to permit counsel for appellee to interrogate the witness further upon the matter, and place the whole transaction before the jury.

4.  EVIDENCE—IDENTIFICATION OF LETTERS—JURY QUESTION—In a prosecution for carnal abuse, where the prosecutrix identified certain letters as having been sent by the appellant to her, and the appellant denied their genuineness, a question is made for the determination of the jury.

5.  EVIDENCE—CRIMINAL PROSECUTION—EVIDENCE OF COMPROMISE.—In a prosecution for the crime of carnal abuse, testimony offered by the appellant that the father of the prosecutrix offered to drop the prosecution for a certain money consideration, is irrelevant and inadmissible.

6.  APPEAL AND ERROR—ARGUMENT OF COUNSEL—FAILURE TO OBJECT.—It is too late to object to improper argument of counsel, for the first time, after the jury has retired to consider their verdict.

7.  CRIMINAL LAW—VERDICT—DUTY OF JURY.—In a criminal prosecution it is the duty of the jury merely, if they find the defendant guilty, to so state, and to assess the punishment, and if they cannot agree on the latter, they may leave its assessment to the court.

Appeal from Prairie Circuit Court; *Thos. C. Trimble,* Judge; affirmed.

*C. B.* and *Cooper Thweat* and *Manning, Emerson & Morris,* for appellant.

1. The court erred in admitting evidence of an offense other than that charged in the indictment. 12 Cyc. 405; 2 Ark. 229; 39 *Id.* 278; 52 *Id.* 303; 111 *Id.* 457, 465; 85 Atl. 797; 107 Mich. 357; 65 N. W. 206; 2 Green. on Ev. (15 ed.) § 47; 73 S. W. 399; 73 S. W. 401; 79 *Id.* 810; 82 Pac. 586; 157 S. W. 307; 90 N. W. 852; 30 So. 840; 84 N. Y. S. 401.

2. The court erred in asking and permitting to be asked leading questions. Also in rejecting proper and in admitting improper evidence.

3. The evidence is not sufficient to support the verdict. The prosecutrix's story is too improbable. 61 S. W. 900.

*Wallace Davis*, Attorney General, and *Hamilton Moses*, Assistant, for appellee.

1. The evidence of sexual intercourse at a different time was properly admitted. Kirby's Digest, §2234; 32 Ark. 205; 52 *Id.* 269; 103 *Id.* 70; 93 *Id.* 275; 131 Pac. 733; 6 Am. Dig. of Cr. L. § 369; 48 L. R. A. (N. S.), 236-7; 68 Kans. 360; 85 *Id.* 418, etc.

2. There was no error in the court asking and permitting to be asked, leading questions. This is a matter within the sound discretion of the court—no abuse is shown.

3. There is no error in the exclusion or admission of evidence. 95 Ark. 310; 104 *Id.* 162; 94 *Id.* 165; 59 *Id.* 431; 103 *Id.* 123; 83 *Id.* 272. As to improper remarks of the court to counsel see 83 Ark. 379; 84 *Id.* 87. No objections were made. 103 Ark. 165, 171. The court properly amended the verdict.

4. The verdict is responsive to the evidence and amply supported thereby.

WOOD, J. 1. Appellant was convicted of the crime of carnal abuse and appeals to this court. The indictment charges that on the 10th of December, 1915, appellant did unlawfully, feloniously and carnally know and abuse one Mabel McCoy, the said Mabel McCoy being a female under the age of sixteen.

Mabel McCoy testified that she was of age January 3, 1916; that appellant had sexual intercourse with her on Friday, December 10, 1915. She was asked by counsel for the State if she had had intercourse with him "at any other time besides that." The appellant objected to the question as leading and the court sustained the objection. Counsel for the State then proceeded to examine the witness concerning the alleged occurrence of December 10.

On cross-examination, while the prosecutrix was being examined by counsel for appellant, he asked her the following question: "Notwithstanding your resistance and your sitting back in the seat as though you were riding along he accomplished the act as you have stated?" and answered, "Yes, sir." Thereupon the court interposed the following

question: "Is that the only time that he had intercourse with you?" Counsel for appellant objected, stating that the State had charged one offense and had attempted to prove one, and the defendant objected to being tried for another offense. Whereupon the court remarked, "They can prove it at any time within three years before the finding of the indictment."

The court then, over the objection of appellant, repeated the question, and the prosecutrix answered that appellant had had intercourse with her one time about December 17. She then proceeded to testify, over appellant's objections, that the second act of intercourse was on Friday night about the 17th of December, 1915. She stated that she had a party at her house; it was raining that night and there were only three there, and she and appellant were standing on the porch talking when he pulled her off the porch and had sexual intercourse with her, lying on the ground between the summer house and the dwelling.

Appellant contends that the ruling of the court permitting the testimony as to the second act of intercourse was reversible error, as that was an offense other than that charged in the indictment. This contention is not sound. Section 2234, of Kirby's Digest, provides: "The statement in the indictment as to the time at which the offense was committed is not material, further than as a statement that it was committed before the time of finding the- indictment, except when the time is a material ingredient in the offense."

In *Williams* v. *State*, 103 Ark. 70, we held that, on a charge of carnal abuse "a conviction will be sustained by proof that the crime was committed by defendant at any time within three years next before the finding of the indictment."

Under the above statute, although the offense was alleged to have been committed on December 10, 1915, evidence that the offense was committed on that or on any other date within three years before the finding of the indictment would sustain the conviction.

The indictment charged but one offense of carnal abuse, and proof of the act of carnal abuse at any time within the period of limitation for the prosecution of such offenses (three years) would sustain the charge. The State did not single out and elect to prosecute for the alleged occurrence on December 10, 1915. This will be shown by the questions propounded to the witness as to whether she had had sexual intercourse with the appellant at any time besides that date. Nor did the appellant demand that the State be required to elect. Counsel for appellant objected to the questions propounded above "as leading." But appellant did not ask that the State be required to prosecute for any one particular act of sexual intercourse, and the questions propounded by counsel for the State, as well as the court, show that it was intended to extend the investigation to any act of intercourse that might have occurred within the period of the statute of limitations for the prosecution of such offences.

The prosecutrix testified that the second act of sexual intercourse occurred at her house, and she testified that she lived in the Southern District of Prairie County. The venue as to the alleged act of intercourse on the 17th of December was clearly established.

Having decided that there was no error in permitting the testimony as to the alleged acts of intercourse of December 10 and 17, and that either or both of these acts would sustain a conviction under the indictment, it is unnecessary here to decide the question so exhaustively argued by counsel that testimony of an offense other than that charged in the indictment would not be competent, for, as we have shown, the case we have under review is not of that character.

11. Counsel urge that the court erred in asking and permitting counsel for the State to ask the prosecuting witness leading questions. The course which the examination of witnesses must take and the form of the questions asked them to properly develop cases and elicit the truth concerning the subject matter of the inquiry must necessarily be left largely to the sound discretion of the trial judge. He has the opportunity to see and hear the wit-

nesses and can best judge from their manner and appearance on the witness stand as to their ignorance or intelligence, candor or lack of it, etc. Since the ultimate object of all trials is to discover the truth and to do justice according to law, the trial judge is given a wide discretion in the matter of determining the form of questions that shall be propounded in order to attain the ends in view.

While leading questions should be avoided as far as possible, because they are often calculated to deceive and to conceal the truth rather than to discover it, yet, when they are permitted by the trial court, this court will not reverse its ruling in that respect unless it appears that there has been a palpable abuse of discretion, resulting in prejudice to the litigant who has challenged the ruling.

We have carefully examined the questions objected to, and considering the age of the prosecuting witness, the delicacy of the subject matter of the investigation, and the answers which the witness had already made to proper questions, we conclude that the court did not abuse its discretion in the questions propounded by it, and in permitting those propounded by counsel for the State. One of the questions objected to as asked by the court is: "Did he have sexual intercourse with you at that time?" This question was asked after the witness had related the circumstances of the night of the 17th of December, as set out above, and had stated that appellant had pulled her off of the porch. She was asked by counsel for the State what occurred then, and answered: "He got to do what he wanted to." It was then that the court asked the question above to which objection was made.

A young girl, called to testify upon a charge of this nature, on public trial, might naturally be more or less embarrassed by the surroundings, and diffident in the presence of curious onlookers who usually crowd the court room during such trials. Therefore, she might be reluctant or unable to express and describe in blunt words the act constituting the offense. Hence, it was not prejudicial error for the court, after she had related the circumstances, to ask the direct questions as to whether appellant had

sexual intercourse with her. The questions asked by the court were no doubt deemed necessary, under the circumstances, to determine whether or not the appellant actually had sexual intercourse with the prosecutrix. Since there had to be actual sexual connection to constitute the offense it was necessary doubtless to ask the witness the direct question, "Did he put his privates in yours?" The court could see and know from the appearance of the witness and her intelligence as to whether or not she could express the act in any other way. The prosecuting witness had testified with reference to the occurrence of December 10th, that she and her mother had visited appellant's home and he was taking her home in a buggy, and he put his arm on the back of the buggy and told her what he was going to do, and did it.

The court then permitted the prosecuting attorney to ask her "what he did," and, "did he have sexual intercourse with you," to which she replied in the affirmative.

On cross-examination, counsel for appellant elicited the fact that the act took place while she was sitting on the buggy seat as she was when she was riding and that appellant was on his knees in front of her.

It was after this testimony was developed that the counsel for the State, on redirect examination, asked the witness to explain further what position they were in when the act of sexual intercourse took place, and asked her the questions: "Did he open your limbs, or did he pull your limbs apart?" and "state whether or not he at any time pulled you up to him?" There was no prejudicial error in permitting these questions to be propounded as they were all asked in an obvious endeavor to have the prosecutrix explain how the act of sexual intercourse could take place in the seemingly impossible position which she had described in answer to questions propounded by counsel for the appellant. In view of the testimony as it had been developed on cross-examination, it was not improper, at least not prejudicial, for the court to further permit counsel for the State to ask the prosecutrix, on redirect examination, the above questions and to permit her to further explain her attitude and that of appellant while

the alleged act of sexual intercourse was being performed.

III.    Witness George W. McCoy, father of the prosecutrix, testified on direct examination as to the age of his daughter, showing that she was under sixteen years of age at the time of the alleged acts of sexual intercourse. He further testified to a conversation that he had with the appellant, in which the appellant intimated that he had had sexual intercourse with witness's daughter, the prosecutrix.    On cross-examination of this witness appellant's counsel asked him if he had talked to his daughter about the matter, and witness replied that he did that evening as quick as he went home, and that when he asked her about it she broke down and cried and stated that she could not help it.

Witness was then asked if he talked to appellant's father about the matter afterward, and answered that he did.    Thereupon counsel for appellant propounded to witness the following question: "You proposed to him if he would give you three hundred dollars you would drop the whole matter?"    Witness answered that he did not. Counsel then asked, "What did you say to him about the matter?  What passed between you about this matter?" Witness replied as follows: "He asked me if I would go to town with him the next day, and we came to town, and on the way up here he says, 'cannot we settle this matter without going into court?' and I said, 'I don't know, I am ignorant about law.'  And he said, 'Have you got any proposition to make?' and I said, 'There is one thing about it; it will take $300.00 to settle my debts and take me out of the country.'"

Counsel for the appellant, on cross-examination, further elicited the fact that McCoy had instituted a civil action against appellant on account of the offense alleged for $5,000.00.

Counsel for the State, on redirect examination, asked the witness to state what appellant's father, in the conversation about the proposed settlement, had stated in regard to their being friends, and the witness answered: "He said, 'we have always been friends,' and I said, 'Yes, and I would like to remain so.'  I said, 'You have done me

a favor; you have given me work when I could not get any; you seemed to be sorry for me and my family, and I tried to be friends to the boy and you would not let me be,' and he said, 'I see where I have made one grand mistake in the way I have raised Lee.'" Appellant's counsel objected to the testimony stating this conversation. The court overruled the objection, and appellant now urges that the court erred in permitting the witness to state that appellant's father said to him, "I see where I have made one grand mistake in the way I have raised Lee."

Counsel for the appellant, on cross-examination of the witness, McCoy, elicited the fact that he had instituted a civil action against the appellant for damages growing out of the alleged carnal abuse of his daughter, and that the father of the appellant had had a conversation with McCoy in regard to a settlement of the matter out of court. This testimony was not responsive to the examination of witness McCoy in chief. Appellant having elicited the testimony on cross-examinaton to the effect that there had been a conversation in regard to a proposed settlement, it was not improper to permit the counsel for the State to examine the witness further in regard to this conversation and to have the witness state all of the conversation. The excerpt set forth, to which counsel for appellant specifically urge an objection is shown to have been but a part of the same conversation between McCoy and the father of appellant in regard to the settlement. The testimony of course, standing alone, would have been wholly incompetent and prejudicial to the rights of appellant. But, since appellant's counsel first adduced evidence of the conversation in regard to the proposed settlement and elicited a part of that conversation, he is in no attitude to complain because the court permitted counsel for the State to put before the jury the entire conversation. The error was one invited by the appellant and of which he cannot now complain.

IV. The appellant was introduced as a witness, and on being shown a certain letter, he testified that he received a similar letter, but did not know whether that was

the one. This letter was identified by the prosecutrix as a letter that she had written to appellant. Another letter was identified by the prosecutrix as one that she had received from the appellant. These letters were introduced in evidence, over the objection of appellant. Appellant denied that he had written the letter which the prosecutrix identified as the one she had received from him, and testified that it was the practice and habit of a number of persons in the community where appellant lived to write letters purporting to be from other persons, and offered to show by a witness that such was the custom.

It was a question for the jury under the evidence as to whether or not the letter identified by the prosecutrix as the one received from appellant had been written by him. She testified that the letter was a letter which she had received from him, and it and the other letter, which was her reply, went to the jury in connection with his testimony admitting that it had received a similar letter to that identified as her letter, and also with his denial that he had written the letter which she identified as one received from him. The question of the genuineness of the letter, under the evidence, was for the jury, and the letters themselves were competent, in connection with this evidence, to go to the jury, as showing the intimate relations between the parties. The letters were full of protestations of love from one to the other. The letter which the prosecutrix identified as the letter of appellant contained, among other things, the following proposition for a secret meeting with the prosecutrix: "Darling, do you sleep in a room by yourself? If so, after all the folks have gone to bed I can come and talk to you. Just anyway, darling, to be with you."

The court did not err in refusing to permit appellant to prove that it was the custom in the community for persons to write letters in such a manner as to lead the recipient to believe it was from some other party. There was no offer to prove the nature of the contents of these anonymous letters. Such testimony was of a collateral nature and wholly irrelevant to the issue involved.

V. Appellant offered to show by his father, H. L.

Stinson, that the father of the prosecutrix came to him and told him that he wanted $300.00 and that if he would give him that amount it would settle the whole matter and he would drop the prosecution. The court refused to permit this testimony and appellant assigns this as error.

The ruling of the court was correct. The above testimony was likewise collateral and irrelevant to any issue on trial. The court, as we have observed, permitted the appellant to elicit testimony on cross-examination as to a proposed settlement. This testimony was irrelevant and incompetent, but appellant is not in an attitude to complain of the error because he had invited it. The testimony which appellant offered along this line was objected to at the time and the court ruled correctly in excluding it.

VI. During the closing argument of Judge Lankford, of counsel for the State, he stated to the jury that it would be a good thing for the boy to send him to the reform school. After the jury had retired to consider its verdict, the appellant asked that they be recalled and instructed not to consider the remarks of counsel. Even if the remarks were improper and prejudicial, there was no objection to them at the time they were uttered, and the request to have them excluded came too late.

VII. The jury, after considering the verdict for a time, returned into court and asked the following question: "The jury wants to know if he is convicted will he be sentenced to the reform school or to the penitentiary?" and the court replied: "You don't sentence him to either one. If you find him guilty just say so by your verdict and assess the punishment, and if you cannot agree you may leave that to the court."

The court correctly answered the question propounded by the jury. Their only duty, if they found the appellant guilty, was to assess the punishment. The court, in its instructions, had already told the jury that the form of their verdict, in the event they found the defendant guilty, would be, "We, the jury, find the defendant guilty as charged in the indictment and assess his punishment at not less than one year nor more than

twenty-one years in the penitentiary." The only province of the jury in case of conviction was clearly and correctly set forth in the court's instruction and in its answer to the question. The jury returned the following verdict: "We, the jury, find the defendant guilty and assess his punishment at two years." The court amended this verdict by adding the words "in the penitentiary." The jury were then polled and answered affirmatively that such was their verdict. There was no error in the court's adding the amendment.

VIII. The last contention of appellant is that the verdict was not responsive to the evidence. It would unnecessarily lengthen this opinion to set out in detail and discuss the evidence. It suffices to say there was evidence to sustain the verdict.

There is no reversible error in the record, and the judgment is therefore affirmed.