# CHARLESTON.

STATE v. LOUIS H. MARTIN

(No. 5715)

Submitted September 7, 1926.   Decided September 14, 1926.

1. CRIMINAL LAW—EVIDENCE—*Written Reports of Mechanics to Company, Made in Regular Course of Employment and Preserved as Original Papers Among Company's Records, Produced and Verified by Proper Custodian, Are Admissible in Evidence Between Third Parties Without Producing Mechanics, Whose Whereabouts Were Unknown.*

Where mechanics do repair work on an automobile in the repair department of the garage of a motor car company, and in the regular course and custom of their employment make written reports of the work done, the time when performed, the materials and supplies furnished and the charges therefor, which reports are filed and preserved as original papers among the motor company's records, such written reports produced and verified by the proper custodian are admissible in evidence in a controversy between third parties, without producing as witnesses the mechanics, it being shown that the whereabouts of the mechanics who made the original reports, is unknown.   (p. 112.)

2. WITNESSES—EVIDENCE—*Where Prosecutrix Testifies Defendant is Father of Her Child and That She Had Intercourse With no Other, Evidence That She Had Been Seen in Sexual Intercourse With Others Near Such Time is Admissible.*

Where the prosecutrix in a statutory rape case testifies on direct examination that defendant is the father of her child begotten as a result of the rape upon her, that she knows he is the father because she has never had carnal communication with any male excepting when the alleged rape was committed, such testimony tends strongly to sustain her charge of rape, and foundation may be laid and evidence introduced to contradict her by showing that she had been seen in sexual intercourse with other persons near the time of the alleged rape.   (p. 113.)

Error to Circuit Court, Brooke County.

Louis H. Martin was convicted of statutory rape, and he brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Robert Wilkin* and *J. J. P. O'Brien,* for plaintiff in error.
*Howard B. Lee, Attorney* General, and *R. A. Blessing,*
Assistant Attorney General, for the State.

LIVELY, JUDGE:

Louis H. Martin complains of a verdict finding him guilty
(with recommendation for mercy) of statutory rape on
Frances Louise Miller, a female under the age of sixteen years,
and a sentence of confinement for five years.

The verdict is based on the evidence of the prosecutrix
corroborated slightly by her mother. Prosecutrix lived with
her mother (who was separated from her husband) on Apple
Pie Ridge along which a public road was being constructed
under the supervision of defendant, who was 26 years old,
married, and was the father of two children. He resided with
his family at Beech Bottom. Prosecutrix swore that she was
sent by her mother (and she is corroborated by the mother in
that particular) to Wellsburg on Saturday morning, August
30, 1924, to purchase a pair of school shoes, and after making
the purchase, she was walking on one of the streets where she,
upon request of defendant, entered his car, a Hudson coach,
to be taken home. Instead of taking her home he drove the
car several miles beyond by another route to the public road
at Locust Grove schoolhouse, where he had sexual intercourse
with her in the car on the road near the schoolhouse, against
her consent and by force, the time being in the afternoon. He
then drove her to a place near her home where she alighted,
arriving home at 7 o'clock P. M. She says that from this
intercourse she became enciente and gave birth to a child about
nine months thereafter. She made no complaint to anyone
and did not tell her mother of the alleged rape until about
two or three weeks before the child was born. Prosecutrix
says she knew defendant only casually; that he had never
called on her or been attentive to her, nor had they been to-
gether before or after the alleged offense.

It appears that after the birth of the child, defendant was
formally charged with its paternity and with the crime of
rape. He was then residing in Ohio where he had a road con-

struction contract, and upon hearing of the charges volun-
tarily returned to defend himself. Upon the trial the prose-
cutrix at the instance of the prosecuting attorney reiterated
the statement that defendant was the father of the child be-
cause no other person had ever had sexual intercourse with
her at any time. Upon cross-examination she denied that she
had told Mrs. Milligan some time before the trial that she was
unable to say who was the father of her child, and denied that
she had had sexual intercourse about the time of the alleged
offense with a certain young man living in her vicinity.

The defense is an alibi. Defendant denied ever having
sexual intercourse with prosecutrix and denied that he ever
took her into his car at any time, or was ever in her company
alone. On the contrary, he swears that on the morning of that
day, August 30th, he drove the car (which was his father's
car and the only one he had) with his wife, two children and
brother (who lived in Wheeling) to the City of Wheeling,
where he left the car for repair with the G. T. Knight Motor
Company, where it remained until the following Monday,
when his brother brought the car from the garage of the
motor company in Wheeling to his home when he, his wife,
children and brother again drove to Wheeling where they at-
tended the fair. After delivering the car to the motor com-
pany on Saturday, August 30th, he joined his wife, attended
a picture show in her company with the children, his brother
going to his (the latter's) home in Wheeling; and about 5
P. M. of that day called for the car to drive it back, but the
car not being finished, he left it with the motor company and
returned home with his wife and children on the traction line.
His wife and brother corroborate him in these particulars.

To further corroborate defendant's testimony, H. C. Diest,
shop foreman of the motor company, introduced in evidence a
work sheet taken from the company's records and made out
by him, which showed that the Hudson car in question came
to the garage on August 30, 1924 (the exact time of day not
indicated) and that certain detailed repairs were to be made
and to be finished that night. Three other cards signed by
''H. C. D.,'' purporting to have been made out by workmen
who made the repairs and showing the hours in which the work

was done and the extent of the repairs, the charges therefor, and charges for material, oil, gas and grease, and showing that the car remained in the garage until 10 o'clock A. M. of the following Monday, were offered in evidence, but were not allowed to go to the jury, on the ground that the workmen who did the work were not produced. Diest said he could only speak from these records which were taken from the records of the company, and he did not personally know that the work was actually done and the material furnished as stated on the cards refused. The refusal of this evidence is one of the points of error. Closely connected with this alleged error (and the two will be considered together) is the refusal of the court to allow the evidence of G. T. Knight, president and general manager of the motor company, as to the fact that these cards and work sheets showing when the car came in, how long it remained, what work was done and the material furnished, and the charges therefor (which charges he said were actually paid), were parts of the original records of the company, made by persons in his employment and under his supervision, permanent records kept in his office under lock and key, and brought to the court by him. His evidence was refused on the ground that he did not do the work himself and did not make out the records offered. He does state, however, that the charges for the work, done as shown by these cards, were actually paid. The workmen who did the work were no longer in the employ of the company and their whereabouts was unknown.

The defense offered the testimony of Harry Mozingo and another witness, to the effect that they witnessed the prosecutrix in sexual intercourse with a boy named Bell, near Cadish Chapel, about the time of the alleged crime. The court refused the proffered testimony. This is the second assignment of error.

Another point of alleged error is the refusal of the court to permit Mrs. Milligan to testify in contradiction of the prosecutrix that the latter had told the former that she did not know the paternity of her child. This point cannot be considered, for it nowhere appears in the record that Mrs. Milligan was offered as a witness for any purpose. No doubt the

statement in the brief that she had been offered was inadvertently made, and was not made with the intention of misleading the court. Possibly she was offered, but we can only consider what is found in the record.

The remaining assignment of error is that the preponderance of the evidence establishes the innocence of defendant, and the motion to set aside the verdict should have been sustained for that reason.

So, the points of alleged error are: (1) the rejection of the evidence of Knight; (2) the rejection of the evidence of Diest, including the work cards; (3) the rejection of the evidence of Mozingo and his companion; and (4) refusal to set aside the verdict for reason stated.

On the last assignment of error, it may be admitted that the evidence of the prosecutrix not corroborated (except by her mother to the effect that she was sent to town for the shoes), the lack of evidence of violence to her person or clothes, and particularly her unexplained failure to promptly make complaint to any person that she had been raped, until at least eighth months, and then only when her pregnant condition was discovered, does not make out a very strong case. The bastard child itself appears to have been at the trial, and she claimed that it resembled defendant, and that may have influenced the jury to believe her. Many of the courts say that failure to make prompt complaint is a suspicious circumstance where the child is old enough to appreciate the character of the act; it is not the test of admissibility but affects its weight; and where there has been an unreasonable delay in making complaint, the delay calls for explanation before evidence of the complaint will be admitted. Wharton Crim. Law (11th ed.) 916 et seq.; *State* v. *Golden,* 90 W. Va. 496, 500. But this court has often held that the uncorroborated evidence of a prosecutrix in rape cases is sufficient to sustain a verdict. *State* v. *Rice,* 83 W. Va. 409. While there is direct evidence that defendant was at Wheeling, and could not have been at the place of the alleged attack at the time testified to by the prosecutrix, nor could the car have been there, the weight of this evidence and credibility of the witnesses were peculiarly within the province of the jury, and we

are loth to disturb the verdict on this, the 4th ground of error.

We come to points of alleged error 1 and 2. Was it error to refuse the evidence of Knight and Diest, together with the records produced by them showing the car was in the garage at Wheeling from August 30th to September 1st? This evidence was vital to defendant. If the car was at Wheeling in the garage, it could not have been twenty miles distant at the schoolhouse where the girl said it was on the afternoon of August 30th. It was an important link in the alibi, and strongly corroborated defendant, his brother and wife, that defendant was elsewhere than at the place of the alleged assault. It will be observed that the work order showing that the car came to the garage on August 30th, and made out by Diest, showing the work to be done on the plugs, chain, foot brakes, door, horn, &c., and "if the car cannot be finished before 5:30 please notify Diest," was admitted; but the work sheets on the car showing what work was done by the mechanics, the hours of the day in which done (extending to September 1st at 10 o'clock A. M.) and the charges therefor, $3.45, were excluded. These workmen had left the service of the motor company and their whereabouts was unknown. By Knight's evidence, as well as that of Diest, these papers were made out by persons in their employ and under their supervision; they were preserved in the office as original records under lock and key; were taken therefrom by Knight and brought to the court. Knight says the $3.45 charges for the work were *actually paid*. Neither of the witnesses saw the work done on the car, nor did either of them see the mechanics make out the sheets offered in evidence. The best evidence undoubtedly would have been the workmen who did the work, if they could have remembered the car when it came to the garage, what hours they worked on it, and what charge was made. No doubt these workmen would have been compelled to use the original records made by them to refresh their memories, and could have spoken only from the record so made. Volume 6, Thompson on Corporations, Sec. 7734, says that the books and records of a corporation are admissible as the best evidence to prove what the corporation has done, as

between two strangers. It must be kept in mind that these work sheets are original papers, not copies or book entries, and are preserved by the motor company as original records. As such, coming from the company's records and produced as such by its proper officers, they were admissible as evidence of what transpired in the due course of its business. The admissibility of such evidence is sanctioned in *French* v. *Ry. Co.*, 121 Va. 383, where a train sheet made by train dispatchers from reports made to them by station agents, of the time trains passed their stations, was admitted as evidence to prove movement of trains, without the testimony of the station agents as to the correctness of their reports, and without the evidence of the dispatchers who made it up. The claim adjuster who had access to the papers, produced the train sheet taken by him in the train dispatcher's office, and testified that it was in the handwriting of three dispatchers who were on duty at the time it was made. So here, the mechanics made written reports of the work done by them, and delivered them to the proper officers of the company, in the regular custom of the company, where they were preserved under lock and key, and these officers verify the reports so made. Our recent case of *State* v. *Larue,* 98 W. Va. 677, cites *French* v. *Ry. Co., supra,* and a number of other similar cases and texts which we think settle the admissibility of the evidence offered. Judge WOOD's reasoning and citations need not be repeated or enlarged. It was reversible error to refuse to admit the original records so offered.

The third assignment of error is the rejection of the proffered testimony of Mozingo and another witness, to the effect that they had together seen prosecutrix and a Mr. Bell in actual illicit intercourse near her home about the 1st of September, 1924. The court refused the proffered evidence, on the ground that she could not be contradicted on an immaterial matter; and the attorney general ably argues that the ruling of the court was right. On direct examination, after she had testified as to the assault made on her by accused on the afternoon of August 30th, the prosecuting attorney had her reiterate the statement that accused was the father of her child (then in the court room), and that she knew it

was his child because no other male had ever had carnal communication with her except him, and then only by him at the time of the assault. If that statement was true, the living result of the assault was a mute witness to prove the rape. It was intended to and did buttress her testimony on the main issue, the criminal assault. It bore directly and forcibly upon the issue of guilt or innocence. Counsel concedes that such evidence could not be introduced to show consent, for there could be no legal consent on her part under the statute. Constructive force is present even though she actually consented. But there is no claim here that she consented. There is a flat and unqualified denial by defendant of any improper acts with her. Nor would it be competent to show that she was a prostitute, because rape may be committed upon a prostitute. Her credibility could not be impeached by that fact alone. *State* v. *Detwiler,* 60 W. Va. 583. If the paternity of the child was collaterial to the issue and was immaterial, it was injected into the case by the state, and standing as true, a fact uncontradicted and unimpeached, it would militate strongly against the innocence of the accused. Reason dictates that if the alleged paternity was not as she stated, or in all probability defendant was not the father of the child as claimed, evidence to rebut her statement should go to the jury. In bastardy proceedings which do not involve life or liberty, where the issue of paternity is raised, it is competent to show that the complainant was intimate with other men about the time of conception. It is true the issue there is the paternity of the bastard; but the paternity of the child in this case is so intimately connected and interwoven by the state with the issue raised on the indictment, that it cannot be regarded as immaterial to defendant when introduced by the state. Moreover, it is rather well established that, "A party who draws from his own witness irrelevant testimony which is prejudicial to the opposing party, ought not to be heard to object to its contradiction on the ground of its irrelevancy." 29 A. & E. Ency. Law (1st ed.) 793; *State* v. *Sargant,* 32 Me. 429; *Sisler* v. *Shaffer,* 43 W. Va. 769. Vol. 1, Wigmore on Evidence (2nd ed.), Sec. 133, says: "In a prosecution, however, for rape, incest, rape under age, or adultery

paternity not being in issue, but merely defendant's act of intercourse, the paternity and therefore the intercourse of another man is immaterial; unless, indeed, the prosecution by inviting the issue, makes counter evidence admissible.'' The case of *Knowles* v. *State*, 72 S. W. 398, is almost identical with the case under consideration. It was there held: ''On a prosecution for statutory rape, the question of consent vel non not being relied on by defendant, prosecutrix having testified that she had no previous intercourse with anyone but defendant, and that he was the father of her child, defendant may show that she had intercourse with others at a time when they could have been the father of the child.'' *Harper* v. *State*, 185 Ind. 322, is authority for the conclusion here reached. The prosecutrix in the Harper case was unmarried, so feeble-minded that she could not give consent, and had given birth to a bastard child. She charged defendant with the rape and consequent paternity of the child. A motion to set aside the verdict on the ground of newly discovered evidence to the effect that others had had carnal relations with her about the beginning of the period of gestation, was denied, and on appeal the supreme court held: ''Where, in a prosecution for rape upon a feeble-minded woman, the prosecutrix testified that the defendant alone had sexual relations with her and proof was offered that she had been delivered of a bastard child, newly discovered evidence that persons other than the defendant had carnal knowledge of her at a time approximating the commencement of the period of gestation is sufficient upon which to grant a new trial, such evidence being competent to explain the incriminating circumstances of pregnancy and to destroy the corroborative effect thereof.'' See also *People* v. *Craig*, 116 Mich. 388; *People* v. *Currie*, 111 Pac. (Cal.) 108, and cases cited.

It was error to refuse the proffered evidence of Mozingo and his companion.

*Judgment reversed; verdict set aside; new trial awarded.*