[October Term, 1934]

## STATE v. SLANE

(No. 1871; February 18, 1935; 41 Pac. (2d) 269)

2

For the appellant, there was a brief by *Chester Ingle,* of Thermopolis, and *Chester Ingle,* Jr., of Casper,, and oral argument by *C. R. Ingle.*

4

For the respondent, there was a brief by *Ray E. Lee,* Attorney General; *O. O. Natwick,* Deputy Attorney General, and *Wm. C. Snow,* Assistant Attorney General, all of Cheyenne, and oral argument by *Wm. C. Snow.*

*Chester Ingle* for appellant in reply.

BLUME, Justice.

The defendant in this case was convicted of having carnal knowledge of Dorothy Isaacson, a female under the age of 18 years and hereinafter called the prosecutrix. From a judgment entered in accordance with the finding of the jury, the defendant appeals. A number of errors have been assigned,

1. The court instructed the jury that one of the material obligations, which was required to be proved beyond a reasonable doubt, was that the defendant did *on or about* the 20th day of March, 1932, carnally know Dorothy Isaacson. The state, pursuant to an order of the court, elected to rely on that date as the date of the crime for which the defendant was being prosecuted. The defendant, deeming the clause "on or about" too indefinite, asked the court to instruct the jury that unless they found the crime to have been committed on March 20th, 1932, they should acquit the defendant. This instruction was refused, and the defendant complains thereof. Ordinarily the exact time is not important, but the circumstances in a case, as when evidence of two or more crimes appear, may render it so. State v. Tobin, 31 Wyo. 355, 226 Pac. 681. In the case at bar the prosecutrix testified to sev-

eral acts of sexual intercourse comparatively shortly before and after the 20th day of March, as well as to the act of intercourse of that date. The other acts to which she testified could not have been earlier than some time after the 14th day of February and not later than the latter part of April of the same year. Testimony of these crimes was admissible only in corroboration, and for no other purpose. Strand v. State, 36 Wyo. 78, 85, 252 Pac. 1030. Yet the term "on or about" March 20 might be considered flexible enough by the jury so as to have included any or all the acts of sexual intercourse mentioned by the prosecutrix. Under these circumstances it has been held error for the court not to give an instruction like that asked by the defendant in this case. Spencer v. State, 24 Ala. App. 140, 131 So. 456, and State v. Pitman (N. J. Sup.), 119 Atl. 438, are exactly in point. See also Love v. State, 142 Miss. 602, 107 So. 667, and People v. Elgar, 36 Cal. App. 114, 171 Pac. 697. In the first of these cases, it was said:

"The testimony as to the defendant's prior censurable association with prosecutrix being before the jury, it is easy to see how they may have become confused as to whether or not it was necessary before they should convict, for them to be satisfied beyond a reasonable doubt of defendant's guilt of the particular charge upon which the state elected, and announced its election, to seek conviction."

In the second of these cases the prosecutrix had testified to five different acts of intercourse, and the defendant asked an instruction that the jury should "find the defendant not guilty, unless they are convinced beyond a reasonable doubt that this offense occurred on October 8, 1920." The instruction was refused, and the court said that "this was harmful, in that the court deprived the defendant of his constitutional right to only answer for and defend against the crime of which

he stood indicted by the grand jury." In 16 C. J. 969 it is said that where "the prosecution elects to proceed for an offense as of a certain date, the instruction should limit the jury to finding whether the offense was committed on that date." In 52 C. J. 1111, it is said that where "there is evidence of other acts than that charged and relied on for conviction, the court should instruct the jury as to the purpose of such evidence and properly restrict them to the act charged." Part of that statement is clearly applicable here. It is not always necessary to confine the instruction to the exact date. The purpose of the rule, as may be gathered from the authorities, is to permit the conviction for only one crime, and to distinguish the date which the state elects from the other dates on which crimes of a similar nature, are shown by the evidence to have been committed. And if that can be and is done in a manner other than by stating the exact date as above mentioned that would doubtless fulfill the purpose of the rule. People v. Scott, 24 Cal. App. 440, 141 Pac. 945; State v. Distefano, 70 Utah 586, 262 Pac. 113. The court should either have done that or should have given the instruction asked by defendant.

2. The court gave the usual instructions that the jury are the sole judges of the credibility of the witness, etc. The defendant asked a special instruction reading:

"The court instructs the jury, as a matter of law, that in this state one accused and on trial charged with the commission of a crime may testify in his own behalf or not as he pleases. You are instructed that when a defendant does testify in his own behalf, then you have no right to disregard his testimony merely because he is accused of crime; that when he does so testify he at once becomes the same as any other witness, and his credibility is to be tested and subject to the same tests as are legally applied to any other witness."

The instruction asked is, as far as we can see, correct. It is one of those generally designated a cautionary instruction. In 16 C. J. 1018 it is said:

"Although it has been held error to single out defendant personally and to charge upon the credibility and weight of his testimony, as a general rule, where accused testifies in his own behalf, the court should instruct the jury that he is a competent witness for himself under the statute and as to the credibility and weight to be given his testimony * * *. But on the other hand, it has been held that it is not necessary * * * to give a special charge on the credibility of the accused as a witness."

See also Randall on Instructions to Juries, Sec. 166.

It is apparent from the foregoing that the authorities are not in harmony on the question here discussed, and, as we said in Strand v. State, supra, whether or not the refusal to give a cautionary instruction is error depends somewhat upon the circumstances in each case. Here the court chose to single out the testimony of the prosecutrix by a special instruction as follows:

"The jury is instructed that in the case of rape, it is not essential that Dorothy Isaacson should be corroborated by the testimony of other witnesses as to the particular act of sexual intercourse constituting the offense, and if the jury believe from the evidence of Dorothy Isaacson, together with all the other evidence and the facts and circumstances, if any have been shown, that the defendant did have carnal knowledge of Dorothy Isaacson as charged in the information, then you would be justified in finding the defendant guilty as charged."

In People v. Scott, 24 Cal. App. 440, 141 Pac. 945, the court gave an instruction similar to that here mentioned, but added that the "law does require in this class of cases that you examine her testimony with care." And as thus given, it was held to be without error. In the case at bar, too, the defendant asked an

instruction that the jury should examine the testimony of prosecutrix with care, but it was not given.

The instruction given by the court does not, in strict logic, touch the question of the credibility of the prosecutrix. It touches merely the weight of her testimony, if credited. Whether or not the jury would, under ordinary circumstances, distinguish between the credibility of testimony and the weight thereof may be doubtful. It is said in 22 R. C. L. 1229 that "the utmost discretion should be exercised to avoid attaching undue weight to the uncorroborated accusation of a prosecutrix." There is at least a question whether that has been observed in the case at bar, and it would seem that in view of the instruction above mentioned given by the court, the cautionary instructions asked by the defendant should also have been given.

3. One Ingles, owner of the A. & R. garage, was a witness for the state and testified that he was present at one time when the prosecutrix and the defendant were in his office. He was asked, "Did you say anything to Floyd Slane relative to their being in the garage that night?" This was objected to for various reasons, including the fact that it was immaterial. The objection was overruled. The witness then stated "I told Floyd that I did not want him to be meeting this young lady in the garage, as it was causing talk." Counsel for defendant here interrupted: "Objected to; the latter part; not responsive to the question." This was overruled, and the witness continued: "And that I wished that he would not meet her at that place. In fact I warned him that, she being under age, would be very apt to get himself into trouble, if he would do as he was doing." The court, perhaps, admitted the statements on the theory that they were preliminary to other testimony. The attitude of the prosecuting attorney, however, did not indicate that, nor did it turn out

to be merely preliminary. We have been attempting to discover wherein the testimony was competent as tending to show that the defendant was guilty as charged, but have been unable to do so, and the state has not enlightened us. The statements were, of course, highly prejudicial. They are in the nature of a conclusion. They give the impression that they are based on some undisclosed knowledge of guilty acts of the defendant, or on some rumor. The state had no right to inject rumor into the case, and if the witness had knowledge of facts, he should have been asked to give them, and not to state his conclusion.

4. W. T. Slane, father of the defendant, was a witness on behalf of the latter. He stated that he had a conversation with Mrs. King at his home. He was asked "what did she say and what did you say," thus opening wide the whole subject of the conversation. The effect of his testimony, though it was somewhat uncertain, is or might, perhaps, be construed to mean, that Mrs. King demanded the sum of $3000 in settlement of the case, and that she did not want Dorothy to marry the defendant. Subsequently Mrs. King was recalled as a witness by the state, and was asked to give the conversation which took place, as above mentioned. The substance of it was, according to her testimony, that the defendant would not marry Dorothy because he could not support a wife, and that W. T. Slane would have to do so, in case the defendant married. The testimony was, doubtless, prejudicial, particularly since it inferentially showed an admission on the part of the father that his son was guilty. And defendant assigns the admission of this testimony as error, particularly because not made in the presence of the defendant. The evidence, if offered by the state in the first instance, would clearly have been inadmissible. But the defendant invited it by the testimony of

W. T. Slane. To have left the latter's testimony unexplained, if it could be explained, would, of course, have been unjust. Fairness, it would seem, required that the state should be permitted to have Mrs. King give her version of it. Whether the defendant could have limited the testimony of W. T. Slane, so as to limit the rebuttal on the part of Mrs. King, also need not be determined. But W. T. Slane purported to give the whole of the conversation, and Mrs. King merely did the same, and we cannot see any error in that. 40 Cyc. 2685; Jones on Evidence (2nd Ed.), Sec. 721. It is said in 64 C. J. 152 that "either party is entitled to introduce evidence to rebut that of his adversary." In Jones, supra, Sec. 718, it is said: "Thus if the testimony raises the inference that a party has made improper advances to a witness, the whole facts, and the language used on the occasion in question may be shown in explanation." In Section 721 of the same work is cited the case of Bogk v. Gassert, 149 U. S. 17, 13 Sup. Ct. 738, 37 L. Ed. 631, wherein, in a civil case a certain conversation had been introduced in evidence by the defendant. The opposite party testified to it also. The court said: "Now while this might have been improper as original testimony, it would have been manifestly unfair to permit Bogk to give his version of the transaction and to deny the plaintiffs the privilege of giving their versions of it. The defendant himself having thrown the bars down, has evidently no right to object to the plaintiffs having taken advantage of the license thereby given to submit to the jury their understanding of the agreement."

5. In view of another trial herein, we should, perhaps, consider some other points closely connected with that just discussed. Mrs. King had instigated the prosecution herein and was in fact the prosecuting witness. She gave some damaging testimony against

the defendant when she was called as a witness by the state in its case in chief. She was asked on cross-examination whether she had not demanded money to settle the case, but upon objection by the state she was not permitted to answer. Interest, relationship, bias and corrupt testimonial intent may always be shown either on cross-examination or by extrinsic testimony. State v. Wilson, 32 Wyo. 37, 52, 228 Pac. 803. And so the weight of authority is that an attempt to settle a criminal case may be shown, most of the cases involving crimes like that in the case at bar. Whaley v. State, (Tex. Crim.) 46 S. W. (2d) 996; People v. Bounderioyni, 299 Ill. 96, 132 N. E. 501; Jenks v. State, 34 Tex. Crim. 201, 29 S. W. 1078; Richards v. State, 34 Tex. Crim. 277, 30 S. W. 229; Odell v. State, 79 Tex. Crim. 209, 184 S. W. 208; McMath v. State, 55 Ga. 303; Huff v. State, 106 Ga. 432, 32 S. E. 348; Billings v. State, 8 Ga. App. 672, 70 S. E. 36; State v. Martinson, 198 Ia. 1325, 201 S. W. 1; Comm. v. Bell, 4 Pa. Super. Ct. 187, 40 W. N. C. 496. See also Boyer v. State, 16 Okla. Crim. 388, 183 Pac. 620; Nichols, Applied Evidence, 1, page 727. Contra, Stinston v. State, 125 Ark. 339, 189 S. W. 40, and perhaps Lenord v. State, 15 Ariz. 137, 137 Pac. 412. It is not at all clear, however, that the court committed any prejudicial error in refusing to let Mrs. King answer as above mentioned. She had been asked by the prosecution whether she had any conversation with W. T. Slane, and upon an affirmative answer, she was further asked to relate what it was. An objection by the defendant that the evidence was incompetent and irrelevant because not made in the presence of the defendant was sustained. When, thereupon, she was asked on cross-examination whether she had not, in the same conversation, demanded money to settle the case, the court, upon objection, ruled that she did not need to

answer because of the fact that the conversation had been excluded pursuant to the objection made by the defendant in her examination in chief, as above mentioned. It may be that the defendant had a right to elicit from the witness testimony bearing upon her credibility and good faith even though he had objected to her giving the whole conversation. But Mrs. King was on the witness stand subsequently, and she then related what purported to be the whole conversation, and therefore in effect answered the question left unanswered before. Moreover, she was again cross-examined at that time, and defendant's counsel did not then see fit to ask her direct questions bearing upon her demand for money. Under these circumstances we are unable to perceive any prejudicial error in this connection.

Defendant also sought to show that Mrs. King had demanded money in settlement of the case by the witness Mary Elliott. Mrs. King, on cross-examination, had been asked the following question: "About a week ago, on Wednesday night, did you make the statement to Mary Mollendoer (Elliott) that if you were asked if you demanded any sum of William T. Slane, you would deny it on the witness stand, because your word was as good as his?" The witness denied it. The defendant sought to show by Mary Elliott that Mrs. King had in fact made such statement, but was not permitted to do so. If Mrs. King had admitted to Mary Elliott that she had made such demand, the defendant, as indicated above, was undoubtedly entitled to show that fact. The statement supposedly made by Mrs. King may bear several constructions. Especially from the latter part, an admission may be inferred that she made a demand for money. Whether that was true or not should, we think, have been left to the jury.

6. A number of errors are assigned on account of

the refusal of the court to admit testimony in the case that at or near the time of the alleged offense herein, the prosecutrix intimately associated with other men, and at times in such a manner as to indicate that she had illicit relations with them. All these assignments may be considered together. The court refused to admit the testimony. In this the court erred. The testimony was offered on the theory that, as held in State v. Quirk, 38 Wyo. 462, 268 Pac. 189, it was admissible after it appeared that the prosecutrix became pregnant and gave birth to a child. Other, and recent cases so holding, aside from those cited in State v. Quirk, supra, are O'Chiato v. People, 73 Colo. 192, 214 Pac. 404; State v. Edwards, 33 N. M. 51, 261 Pac. 806; State v. Orton, 69 Utah 304, 254 Pac. 1003; State v. Martin, 102 W. Va. 107, 134 S. E. 599; Whaley v. State, (Tex. Crim.) 46 S. W. 996. In the last of these cases it was said: "The appellant was within his rights in insisting that he be permitted to introduce proof that the prosecutrix had other associates, some of them males who had opportunity for contact with her." It is, of course, true that the fact that the prosecutrix under 18 years of age may have had sexual intercourse with other men does not excuse the defendant. But when it appears that she has become pregnant or has given birth to a child, an element is injected into the case which is of peculiar importance. It is conclusive proof that she has had intercourse with some man. Hence if prosecutrix testifies that defendant had sexual intercourse with her, and association of defendant with her during the period of possible or probable conception appears, and there is, in addition, a total absence of evidence of her association with other men, the jury is likely to draw the conclusion that since the defendant only appears to have had access to her, he is necessarily guilty. In other words, the absence of evidence of association

with other men is apt to have a peculiar and unwarranted force, and would likely not only be corroborative of the testimony of the prosecutrix in the ordinary sense, but would have a tendency at least to make her testimony appear as almost conclusively true. An instruction that the birth of a child is not corroborative of the testimony that defendant had intercourse with defendant might diminish, but would not, we think, properly counterbalance the force of the absence of such testimony. Such instruction states or intimates, it is true, that some other man may be responsible for the existence of the child, but its effect is necessarily limited in the absence of evidence of opportunity of access to the prosecutrix on the part of other men.

The state contends that the fact of the birth of a child to prosecutrix was, in the case at bar, first brought out by the defendant on cross-examination of the prosecutrix in response to a question when the child was born, and that the offered testimony was properly excluded on that ground. We cannot agree with that contention. The record shows that the prosecuting attorney in his opening statement to the jury made, among others, the following remarks:

"They came back here sometime along the latter part of June, and that, at a celebration or rodeo, on the 4th of July, I think, at the fair grounds, she jumped down off from a fence and complained to her mother about a pain in her side; that she was then taken to a doctor and she obtained the information that she was in the family way, and that thereafter, on the 13th or 16th— it doesn't make any difference—the evidence will show that on the 13th or 16th of November a baby was born to Dorothy. The evidence will also show, Gentlemen of the Jury, that Floyd Slane purchased or obtained at Herard's drug store some capsules in a small box, which will be introduced, from Ed Crilly, and gave them to her with instructions to take them for the purpose of bringing on her regular—or a menstruation; that he afterwards told her to get some ergot, or ergot

capsules—I don't know what they are exactly—and that she did get from George Herard a box of eight or ten, I think she says ten, ergot pills, and that she took them, at the direction of Floyd Slane.

"The evidence will show that after Mrs. King learned of her daughter's misfortune, she wrote to Floyd Slane and asked him to be a man, that he was the guilty party, that he was responsible for her unfortunate condition, and asked him to be a man. Her letter to that effect, Gentlemen, will be introduced in evidence here. The evidence will show that she had a conversation with William Slane, the father of the boy, in which she again repeated her request that his boy, who was a man between thirty and forty years of age, show himself to be a man and marry the little girl, for no other purpose in the world than to give the baby a legitimate birth and a name."

The prosecutrix on her direct examination testified to the giving and receipt of the ergot and capsules above mentioned. We have not the slightest doubt that this testimony and the statement of the prosecuting attorney gave the jury a distinct impression of the pregnancy of the prosecutrix and of the birth of a child just as effectually as direct evidence would have done, and as said in Lacycock v. People, 66 Colo. 441, 182 Pac. 880, it would have been difficult to have obliterated these facts from the jury's mind. If the rule as to the admissibility of evidence of intercourse with other men is to be of any value, it cannot be construed as narrowly and technically as the state does here. The situation should be dealt with from a practical standpoint. If knowledge of pregnancy or of the birth of a child is deliberately brought to the attention of the jury by the defendant, when otherwise there would be no likelihood thereof, then, probably, the rule should not apply. But when the situation or circumstances in the case suggest or make it likely, as is probably true in most cases in a small community, that the jury have information thereof, then the defendant should be

given the benefit of the rule. If the court perceives that the admission of the evidence here discussed might mislead the jury into thinking that illicit relations of the prosecutrix with other men would excuse defendant's proved illicit relations with her, a proper cautionary instruction, indicating the purpose for which such evidence is admitted, could be given.

7. Defendant produced witnesses and offered to show by detailed testimony that the child born to the prosecutrix was a full grown child, that the usual period of gestation is 288 days, and that, accordingly, the conception of the child probably took place not later than February 1st, 1932, a number of days prior to the time that prosecutrix met the defendant, even according to her testimony. The court excluded the testimony. We think this was error, particularly when the birth of a child appeared in evidence. Rowe v. State, 155 Ark. 419, 214 S. W. 463, and see 52 C. J. 1078 and cases cited under note 27.

We have discussed all the assignments of error which we deemed of importance. For the errors herein pointed out, the judgment herein is reversed, and the cause is remanded to the court below for a new trial.

*Reversed and Remanded.*

KIMBALL, Ch. J., and RINER, J., concur.